IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EPIQ CLASS ACTION AND CLAIMS
SOLUTIONS, INC. (formerly Poorman-
Douglas Corporation), a Rhode Island
corporation,

                Plaintiff,

    v.

JAMES R. PRUTSMAN, an individual;
and RUST CONSULTING, INC., a
Minnesota corporation,

                Defendants.

No. CV 09-1185-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Defendants James Prutsman and Rust Consulting, Inc. filed a motion seeking reconsideration of my November 13, 2009 Opinion and Order (#74) granting a preliminary injunction to plaintiff Epiq Class Action and Claim Solutions, Inc. (*See* Defs.' Mot. for Recons. (#77).) For the reasons stated below, I DENY defendants' Motion for Reconsideration (#77).

## DISCUSSION

    Reconsideration pursuant to Federal Rule of Civil Procedure 59(e) is appropriate "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). Defendants make two arguments in their motion—first, that my ruling created a third exception

PAGE 1 - OPINION AND ORDER

to Oregon's statutory prohibition on noncompetition agreements, and second, that I incorrectly relied on legislative history in my analysis. (*See* Defs.' Mot. for Recons. (#77) 2, 5.) Both of these arguments seem to contend that I committed clear error or made an initial decision that was manifestly unjust.

### A.     *Clarification of Analysis*

Defendants primarily argue that my prior decision created a new exception to ORS 653.295. (*See id.* at 2-5.) I disagree with such a contention and use this opportunity to clarify my analysis to avoid any confusion. I previously found that Mr. Prutsman entered into a generally valid noncompetition agreement in 2003 ("2003 Agreement"), clearly within the statutory framework, upon his bona fide advancement in joining the sales team. (Op. & Order (#74) 4.) The primary question, then, was how to characterize the subsequent 2004 noncompetition agreement ("2004 Agreement") Mr. Prutsman signed following the stock acquisition. But it is important not to lose sight of the 2003 Agreement, which is essential to my analysis. Without a valid, pre-existing noncompetition agreement, the 2004 Agreement would be invalid.

This case raises a novel question—what is to be done when circumstances call for some modification or re-issuance of a noncompetition agreement, but which do not amount to "initial employment" or "bona fide advancement"? This may arise where a merger or acquisition occurs, under facts that do not amount to initial employment, but which still involve new owners. The core of my analysis is that in such circumstances the pre-existing, valid agreement can be modified or re-issued so long as the changes to the noncompetition agreement are either neutral

or favorable to the employee.[1]

It is worth noting here that the 2004 Agreement is just one part of a new employment contract.[2] Nothing in ORS 653.295 prohibits a new employment contract when new owners take over an existing business. The sole focus is on what, if anything, such a new contract may contain with regard to noncompetition. Defendants make much of the merger clause in the 2004 employment contract. But the merger clause does not erase the pre-existing validity of the 2003 noncompetition agreement, nor its centrality to my analysis. It seems like having your cake and eating it too for defendants to argue that the merger clause erases the otherwise-valid 2003 noncompetition agreement and argue that the 2004 noncompetition agreement is itself invalid, leaving Mr. Prutsman with the unexpected windfall.

In analyzing the validity of the 2004 Agreement, I chose not to treat it as a completely independent, unrelated event. (*See* Op. & Order (#74) 5-6 (disagreeing with plaintiff's argument that circumstances of the 2004 Agreement created an independent event, or "initial employment").)[3] Rather, in light of the 2003 Agreement, the signing of the separate 2004

---

[1] A neutral modification may be as simple as replacing the name of the entity, or substituting a new owner's standard language or format containing precisely the same substantive terms. A favorable modification may involve reducing either the length of time or geographic scope by which an employee is bound.

[2] In several instances, defendants seem to factually intermingle the narrow noncompetition agreements with the more general employment contracts. I remind defendants that ORS 653.295 relates only to noncompetition agreements, as does my analysis. When I refer to the "2003 Agreement" and "2004 Agreement," I intend to reference only the specific noncompetition agreements within more general employment contracts.

[3] Plaintiff continues to contend that the circumstances here qualify as "initial employment," and I continue to disagree with this characterization. (*See* Pl.'s Resp. to Defs.' Mot. for Recons. (#81) 4 ("At most, [the court's ruling] could be interpreted to apply in the rare cases . . . [of] a second less onerous agreement entered into upon initial employment with a new

PAGE 3 - OPINION AND ORDER

Agreement served exactly the same purpose as two alternative options that Mr. Prutsman agrees would have been valid. (*See* Op. & Order (#74) 7.) Epiq Systems, Inc. could have simply allowed the 2003 Agreement to continue "by virtue of the stock acquisition itself," or Poorman-Douglas Corporation could have assigned the 2003 Agreement to the new owner, Epiq Systems, Inc. (*Id.*) I held that the new owner could modify the existing, valid noncompetition agreement, which the employee had originally signed pursuant to initial employment or bona fide advancement, as long as the modification was not more onerous for the employee. (*See id.*) The context, including legislative history, became important on the particular facts of this case to ensure that the modification in this instance did not run afoul of the legislature's intentions regarding the narrow circumstances in which noncompetition agreements are valid. I concluded that it did not.

B.     *Was the 2004 Agreement More Onerous?*

The essential element in my prior analysis is a modification that is either neutral or favorable to the employee. (*See* Op. & Order (#74) 7 (finding that the 2004 noncompetition agreement was "*less onerous*") (emphasis in original).) Typically, a noncompetition agreement contains two critical factors—length of time and geographic scope. Here, the 2004 Agreement indisputably reduced the length of time that Mr. Prutsman must not compete from two years to twelve months. (*See id.*)

In their Motion for Reconsideration, defendants argue, in a footnote, that the 2004 Agreement may have increased the geographic scope in which Mr. Prutsman must refrain from

---

employer in a merger or acquisition.").)

PAGE 4 - OPINION AND ORDER

competing.[4] (*See* Defs.' Mot. for Recons. (#77) 5 n.4.) While former Poorman-Douglas appears to have conducted business in nearly every state (*see* Shimek Decl. (#23) Ex. 1), defendants are correct to clarify that the 2003 Agreement appears to only prohibit Mr. Prutsman from competing in counties in which Poorman-Douglas did business. The 2003 Agreement states that:

> While employed by the Company . . . Employee will not perform any work as a competitor or for a competitor of the Company or any assignee *in the counties* of the states where the Company or any assignee does business. Under this restrictive covenant, Employee specifically agrees that s/he shall not as a sole proprietor, consultant, owner, shareholder or employee, work for any entity that provides, performs, sells, designs, services, or monitors *in such counties* any of the following: (1) Class Action/Bankruptcy/Mass Tort Case Administration; (2) Electronic Presentment Services; or (3) Legal Notice Advertising.

(*See* Mins. of Proceedings (#58) Pl.'s Ex. 6 at 302 (emphasis added).) The 2004 Agreement, however, restricts competition "within the United States and its Territories." (*Id.* at 304.)

In practical terms, the difference in the geographic scope of the two agreements approaches zero. In Oregon, for example, the 2003 Agreement might ban Mr. Prutsman from competing in the Portland market, while the 2004 Agreement would not only ban Portland, but prevent him from offering his services in Hood River, Pendleton, or Medford—something he seems unlikely to desire under his current business plan.

We will leave for another day a more rigorous evaluation of the difference in geographic scope between the two agreements. For today's purposes, we are on the limited record available at this injunctive phase. Defendants' minimal showing and bare assertion on this point does not appreciably alter the balance. I continue to hold that plaintiff has—so far—met its burden of

---

[4] In the same footnote, defendants argue that other elements of the employment agreement make the 2004 Agreement more onerous. The factors to which they point, however, do not related to the specific noncompetition agreement, but to other parts of the employment contract.

PAGE 5 - OPINION AND ORDER

showing a likelihood of success on the merits.

## CONCLUSION

For the reasons given above, I DENY defendants' Motion for Reconsideration (#77).

IT IS SO ORDERED.

DATED this   11th   day of December, 2009.

                                         /s/ Michael W. Mosman
                                         MICHAEL W. MOSMAN
                                         United States District Judge